Filed 10/24/13  P. v. Jackson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B241547 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA382396) |
| v. | |
| ROBERT RAY JACKSON III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Robert Ray Jackson III of one count of sale of cocaine base and one count of possession of cocaine base for purposes of sale. Jackson timely appealed, and we affirm.

## BACKGROUND

An information filed May 11, 2011 charged Jackson with two counts of sale of cocaine base in violation of Health and Safety Code section 11352, subdivision (a) (counts 1 and 2) and one count of possession of cocaine base for sale in violation of Health and Safety Code section 11351.5 (count 3), all on March 22, 2011. The information also alleged that Jackson had a prior strike under Penal Code sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), and had two prior prison terms under Penal Code section 667.5, subdivision (b). Jackson pleaded not guilty and denied the special allegations.

After trial, a jury acquitted Jackson on count 1 and convicted him on the remaining two counts. In a bifurcated proceeding, Jackson admitted his prior strike and prior prison terms as alleged. The trial court denied probation and sentenced Jackson to eight years in state prison, consisting of the midterm of four years on count 2, doubled to eight years under the "Three Strikes" law, and imposed the midterm of four years on count 3, which the court stayed under Penal Code section 654. Jackson was ordered to pay fines and received presentence custody credit.

The prosecution presented evidence at trial that on March 22, 2011, the Rampart Narcotics Enforcement Unit of the Los Angeles Police Department (LAPD) was conducting an undercover operation at 8th Street and Alvarado near California Donuts, after many complaints about sales of rock cocaine at that location. Officer Marco Oropeza approached a man later identified as "McCormick," and asked, "'Where can I get a 20,'" meaning $20 worth of rock cocaine. McCormick asked for the money, and Officer Oropeza gave him a $20 bill that had been "prerecorded," or photocopied at the station so that the bills could be tracked by the serial numbers. McCormick took the $20, and then stepped away and made a call on his cell phone. After the conversation,

2

McCormick got off the phone and looked up and down the street, pacing back and forth and gesturing for Officer Oropeza to "hold on."

Jackson appeared, riding a bicycle westbound on 8th Street in the direction of Officer Oropeza and McCormick. Jackson stopped 10 feet away from Officer Oropeza. An unidentified male approached Jackson and handed him money, and Jackson gave the man a small item that "appeared like a small bindle." McCormick then approached Jackson and handed him the prerecorded $20, and in exchange Jackson handed McCormick a small item, an off-white solid packaged in a clear bindle. Officer Oropeza thought the item was rock cocaine, and in his opinion Jackson was selling cocaine to the unknown man and to McCormick. Jackson rode away on his bicycle, and McCormick appeared to be tearing up the bindle, when uniformed officers arrived in a black-and-white with red overhead lights on and detained McCormick, who had a crack pipe and a cell phone in his pockets. Officer Oropeza walked down the street, and an unmarked police car picked him up and drove him to Westlake Avenue, where he saw Jackson being detained by other officers.

LAPD Detective Michael Kearney testified that he was the supervising officer overseeing the operation. When he heard that a suspect was leaving the area on a bicycle, Detective Kearney drove his unmarked vehicle southbound on Westlake and saw Jackson on his bicycle, cutting fast across James M. Wood. Another unmarked police car driven by Detective Jorge Trejo was behind Detective Kearny. When Detective Kearney got close, Jackson turned, looked over his shoulder, rode up onto the sidewalk and made a throwing motion with his right hand toward a block wall topped with wrought iron rods, around a church parking lot. Detective Kearney pulled ahead and into a driveway to cut Jackson off, but Jackson went around the back of the car. Officer Trejo managed to stop Jackson, and took him into custody.

Detective Kearney went back to the church parking lot to look for what Jackson had thrown, using his flashlight. He saw four off-white solids resembling rock cocaine lying on the ground, within several feet of each other. Officer Oropeza joined him and also saw the scattered bindles at least two feet inside the wall. The bindles were booked

3

into evidence. Assuming the bindles were rock cocaine, Officer Oropeza estimated their street value at $20 each. Chemical testing later confirmed that the bindles contained cocaine base.

Officer Oropeza believed that McCormick, like the unidentified male who approached Jackson initially, was a "hook" who brought customers to Jackson, in exchange for a kickback or a small piece of the rock cocaine the "hook" could break off with his hands. Someone holding a $20 rock could get rid of it by throwing it away, or by turning away, putting it in his mouth, and swallowing it.

Officer Trejo testified that his car was behind Detective Kearney's, and he did not see Jackson make any motion with his hand. When he searched Jackson, he found the prerecorded $20 bill in Jackson's front pocket with an additional $69, and there was $490 in Jackson's wallet. The money other than the prerecorded $20 bill was in two $100 bills, nine $20 bills, six $10 bills, nineteen $5 bills, and twenty-four $1 bills. Jackson's cell phone was attached to his belt, and the phone log showed a call to and a call received from McCormick's cell phone.

In his defense, Jackson called Cornelius Rogers, who testified under subpoena. Rogers testified that in October 2006, Detective Kearney fabricated a police report that Rogers had in his possession a water bottle which contained drugs; Rogers filed a complaint against Detective Kearney with internal affairs, and the case against Rogers was dismissed. Rogers was currently in custody, and admitted he had "at least two or three" prior felony convictions for selling drugs. On cross-examination, Rogers testified that he was on probation for a drug offense at the time of the 2006 incident.

Jackson testified in his own defense. On March 22, 2011 at 8:00 p.m., he was riding his bike home from work when McCormick, an old friend, called and suggested he stop by 8th Street and Alvarado to pick up some money McCormick owed Jackson. He rode by slowly, never getting off his bike, and took the money from McCormick and went on his way. He did not have contact with anyone else, and did not give McCormick any drugs. Jackson did not know he was being followed by the police until an unmarked car cut him off, and an officer got out and arrested him. He did not toss anything into the

4

church parking lot. Jackson did not have a bank account, and the cash that the police found in his possession was to buy money orders and food, and to pay bills. Jackson admitted he was on probation on March 22, 2011, and had suffered two prior convictions involving moral turpitude, in 1997 and 2008. The current case against him had been entirely fabricated by the officers.

A forensic print specialist testified that no latent prints were found on the bindles, which did not mean that someone did not touch them.

In rebuttal, Detective Kearney testified that he remembered the incident on October 26, 2006 that led to Rogers's arrest, and he had reviewed the police report that he had written. Detective Kearney had seen Rogers entering an underground parking lot with a woman, Bernice Sly, who was carrying an Aquafina water bottle from which rock cocaine was later recovered. As Detective Kearney and his partner approached the parking lot in a patrol car, his partner noticed something that Detective Kearney placed in the police report, which was that Rogers had also been in possession of the water bottle. Both Sly and Rogers were arrested in the garage. Detective Kearney had not himself seen Rogers in possession of the bottle.

The internal affairs investigation of Detective Kearney was determined to be "unfounded." Deputy District Attorney Steven Slavitt testified that the charge against Rogers was dismissed in the interest of justice, as Rogers's probation was revoked and the amount of time that he would serve for the probation violation would take care of the punishment for the 2006 case.

## DISCUSSION

### I.    The failure to object on confrontation clause grounds was not ineffective assistance of counsel.

When the prosecutor told the court that she planned to present Detective Kearney to rebut Rogers's testimony that the detective had fabricated the report and evidence in 2006, she explained that Detective Kearney would testify to hearsay statements of other officers that they had observed Rogers as well as Sly with the water bottle that contained the rock cocaine. The statements would not be offered for their truth, but to explain why

5

Detective Kearney wrote that in his report and why the report was not a fabrication. Over defense objection that the statements were hearsay, the court admitted the statements. Detective Kearney testified that his report contained "other officers' observations," which was normal in generating an incident report. Detective Kearney testified that his partner, who was with him in his patrol car, told Detective Kearney that he had observed Rogers in possession of the water bottle that contained rock cocaine. Officer Kearney never claimed that he himself had seen Rogers in possession of the water bottle.

Jackson acknowledges that by failing to object to Detective Kearney's testimony on confrontation clause grounds in the trial court, he has forfeited any confrontation clause claim on appeal. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19.) Instead, he asserts that defense counsel's failure to object to Detective Kearney's rebuttal testimony on the ground that it violated the confrontation clause was ineffective assistance of counsel. We disagree, concluding that counsel's performance was not objectively unreasonable. (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

The other officer's (or officers') statement that a third party—not Jackson, but Rogers—was holding a water bottle containing cocaine in 2006, does not implicate the confrontation clause. The confrontation clause guarantees that a criminal defendant has a right "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.; see Cal. Const., art. I, § 15.) The clause bars admission of "testimonial" out-of-court statements offered against the defendant, unless the witness is unavailable at trial and the defendant had a prior opportunity to cross-examine the witness. (*Crawford v. United States* (2004) 541 U.S. 36, 59 [124 S.Ct. 1354, 158 L.Ed.2d 177].) The other officers' statement was presented during Detective Kearney's rebuttal testimony, not to prove Jackson's guilt regarding the 2011 events in issue at trial, but to rebut Rogers's claim that Detective Kearney had fabricated a police report five years earlier in 2006, and the implication that the detective had thus testified falsely in Jackson's trial. Dispositively, Kearney's partner and any other officers were not witnesses against Jackson, and the statement that Rogers possessed the water bottle in an unrelated narcotics crime was not

6

an out of court statement offered against Jackson. The witness against Jackson—Detective Kearney—testified at Jackson's trial and was thoroughly cross-examined. Jackson's counsel was not unreasonable in failing to object on a constitutional ground that did not apply.

## II. The trial court did not abuse its discretion in admitting Jackson's prior convictions for impeachment purposes.

Jackson argues that the trial court abused its discretion when it allowed the prosecution to impeach him with his 1997 (burglary) and 2008 (narcotics) felony convictions for crimes involving moral turpitude, and his probationary status at the time of his arrest in March 2011.

The trial court and the prosecutor agreed with Jackson's counsel's request that the prior felony convictions be sanitized, and the trial court pointed out that the 1997 conviction was not remote because Jackson had been "consistently in trouble since that time." The court concluded that the probation status was relevant because it could give Jackson an additional motive not to tell the truth, as if he were found to have violated his probation he would face an additional penalty. The jury was instructed that the prior convictions may be considered only in evaluating Jackson's credibility as a witness.

Jackson admits that impeachment of a criminal defendant with prior felony convictions is "broadly permitted," acknowledges that the trial court sanitized the prior convictions (which were presented to the jury only as crimes involving moral turpitude), and concedes that multiple convictions may be properly admitted when the defendant testifies, because (as Jackson did) if appellant takes the stand and disclaims any culpability, he should not be entitled to a "false aura of veracity." (*People v. Beagle* (1972) 6 Cal.3d 441, 453.) Nevertheless, he contends that "'other circumstances'" made the admission of his prior convictions an abuse of discretion. Jackson argues that there should have been an "equilibrium" between the weight of his attempt to impeach Detective Kearney (Rogers's testimony) and the prosecution's attempt to impeach Jackson with his prior convictions, making the admission of two convictions and his probation status an abuse of discretion.

Jackson provides no case support for this argument that there must be an equivalence between the weight of impeaching evidence, and we have found none.  We decline to apply such a requirement to the question of whether the trial court abused its considerable discretion, and we conclude that no abuse of discretion occurred.

**III.    The trial court did not abuse its discretion in denying Jackson's motion to dismiss his prior strike conviction.**

Jackson filed a motion to dismiss his prior strike conviction (the 1997 burglary conviction) pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and Penal Code section 1385, arguing that his present charge was not a serious or violent felony and Jackson did not fall within the spirit of the Three Strikes law.  At the sentencing hearing, counsel for Jackson argued that the amount of rock cocaine was small, and the jury had found Jackson not guilty on count 1.  The prosecutor responded that during the years since the prior strike, Jackson had either been in custody or had been committing other crimes, and in the present case Jackson had been arrested holding a large sum of money indicating that he had been selling many small amounts.

Recognizing that it had discretion to grant the *Romero* motion, the court denied it. Jackson's current offense was a serious felony, and his prior convictions were not minor and were constant ("you have spent very little time outside").

A trial court may strike a prior felony conviction only "in furtherance of justice." (Pen. Code, § 1385, subd. (a).)  "[T]he court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  "[T]he three strikes law . . . establishes a sentencing norm, . . . circumscribes the trial court's power to depart from [that] norm and requires the court to explicitly justify its decision to do so[,] . . . creat[ing] a strong presumption that any sentence that conforms to these sentencing norms" is appropriate.  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  A

8

trial court should not dismiss a career criminal's strike conviction unless the circumstances are "'extraordinary.'" (*Ibid.*)

We will reverse the refusal to strike the prior strike only if Jackson can show that the trial court's decision was irrational or arbitrary, and we do not substitute our judgment for that of the trial court. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained its reasoning even though it was not required to state its reason for refusing to dismiss a strike, which "reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three Strikes Law." (*Id.* at p. 376.) As we see no extraordinary circumstances, we conclude the trial court's ruling on the *Romero* motion was not an abuse of discretion.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.